**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**UNITED STATES OF AMERICA,**

                          **Plaintiff,**

                        - against -

**FIFTY THOUSAND SIX HUNDRED NINETY-NINE DOLLARS AND FIFTY CENTS ($50,699.50) IN UNITED STATES CURRENCY SEIZED FROM BANK OF AMERICA ACCOUNT NUMBER 483064348710 HELD IN THE NAME OF KNIGHTSBRIDGE PRIVATE PARTNERS LLC, et al.,**

                        **Defendants *in rem*.**
-----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

19-CV-5408 (RPK)

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

The United States of America ("plaintiff" or "the government") commenced this civil *in rem* forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C) on September 23, 2019, to forfeit, and condemn to the use and benefit of the United States, funds seized from three Bank of America ("BOA") accounts, in the aggregate amount of $70,315.83 (the "Defendant Funds"). See generally Complaint (Sept. 23, 2019) ("Compl."), Electronic Case Filing Docket Entry ("DE") #1. Despite proper service of the summons and Complaint, no claimant has asserted an interest in the Defendant Funds by filing a claim in this Court in accordance with Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Forfeiture Rules"). See Declaration of Assistant United States Attorney Karin Orenstein (Mar. 2, 2020) ("Orenstein Decl.") ¶¶ 7-8, DE #8-1. The government now moves for entry of a default judgment and decree of forfeiture pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), 18 U.S.C. § 981(a)(1)(C), and the Forfeiture Rules. See March 2, 2020

Cover Letter (Mar. 2, 2020) ("3/2/20 Cover Letter"), DE #8; Default Judgment and Decree of Forfeiture and Order for Delivery (Mar. 2, 2020) ("Default Judgment and Decree of Forfeiture Order"), DE #8-2. The Honorable Rachel P. Kovner referred the government's motion to the undersigned magistrate judge on March 24, 2020. See Order Referring Motion (Mar. 24, 2020). For the reasons that follow, the government's motion should be granted in substantial part.

## BACKGROUND

The following facts are derived from the uncontested allegations in the government's Complaint,[1] and are taken as true for the purposes of deciding the government's motion for default judgment. See United States v. Approximately $447,420.00 in U.S. Currency, 19 CV 3528 (AMD)(LB), 2020 WL 821904, at *1 (E.D.N.Y. Feb. 3, 2020) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997)), adopted, 2020 WL 818748 (E.D.N.Y. Feb. 19, 2020). On or about and between October 2018 and March 2019, Knightsbridge Private Partners LLC ("Knightsbridge"), along with Axe Marking Group LLC d/b/a Access Pre IPO ("Access"), and various individuals, solicited investments in pre-Initial Public Offering ("pre-IPO") shares of companies such as Lyft, Inc. ("Lyft"), Uber Technologies, Inc. ("Uber"), and Palantir Technologies Inc. ("Palantir") (collectively, the "Companies"). See Compl. ¶ 12. Specifically, Knightsbridge and Access operated a series of websites and call centers by which their employees solicited purported investments in these pre-

---

[1] Attached to the Complaint is a sworn declaration from Robert Cappadona ("Agent Cappadona"), a Special Agent with the Federal Bureau of Investigations. See Compl. at ECF p. 11. Under penalty of perjury, Agent Cappadona verifies that the factual matters contained within the Complaint – and which are relied upon herein – are true and accurate to the best of his knowledge. See id.

IPO Companies.  See id. ¶ 13.  These employees represented that Knightsbridge owned pre-IPO shares in these Companies despite the fact that Knightsbridge did not directly own any shares in these Companies.  See id.[2]  Between October 2018 and January 2019, investors paid Knightsbridge approximately $2.1 million in monetary investments based on these misrepresentations,[3] see id. ¶ 17, money that was placed in the following accounts:

**1. The Knightsbridge 8781 Account ($50,699.50)**

Bank records show that a business checking account (No. 483064348781) at Bank of America was opened in the name of Knightsbridge (the "Knightsbridge 8781 Account") on or about October 5, 2018.  See Compl. ¶¶ 4, 22.  The address listed in the bank records for the Knightsbridge 8781 Account was 1775 Newbridge Road, Bellmore, New York, the location where Knightsbridge and its employees solicited investments.  See id. ¶ 22.  The sole signatory on the Knightsbridge 8781 Account was a Knightsbridge partner.  See id.  Between in or around October 2018 through and including February 2019, the Knightsbridge 8781 Account

---

[2] According to information provided by the Companies, in late 2018, neither Knightsbridge nor KPP Late Stage LLC ("KPP"), a Delaware company and Knightsbridge affiliate, see Compl. ¶ 26, were on the Companies' capitalization tables (records of shareholders), nor did the Companies have records reflecting that either of these entities owned shares of the Companies, see id. ¶¶ 14-16.

[3] The Complaint provides an example of an investor purportedly deceived by Knightsbridge.  According to the Complaint, the investor, an 86-year old resident of Alabama, informed the FBI that he was solicited over the telephone by two brokers at Knightsbridge on or around February 1, 2019.  See Compl. ¶ 17. The brokers told the investor that Knightsbridge had purchased shares of Uber from an Uber employee and offered to sell them to the investor at approximately $62.00 per share.  See id.  The brokers also represented that they would not receive a commission on the investor's investment in Uber through Knightsbridge, but that when Uber went public and the investor sold his shares, Knightsbridge would receive approximately ten percent of the investor's profits from the sale.  See id.  The investor agreed to purchase 2,000 shares of Uber stock from Knightsbridge, and subsequently received documents reflecting that purchase.  See id. ¶ 19.  Ultimately, the investor wrote two checks to Knightsbridge totaling $124,944.00, both of which were endorsed by Knightsbridge and deposited into the first of the three BOA accounts discussed hereinafter.  See id. ¶ 21.

received approximately $2,135,836.00 from investors who believed that they were buying shares in the pre-IPO Companies. See id. ¶ 23. The Complaint offers, as examples, four checks that were deposited into the Knightsbridge 8781 Account:

> (1) "[a]n October 16, 2018 check for $15,750, in which the memo line read 'Lyft 250 shares @ 63.00 each.'";
>
> (2) "[a]n October 17, 2018 check for $197,130, in which the memo line read '10,000 shares IPO Palantir.'";
>
> (3) "[a] November 6, 2018 check for $15,000, in which the memo line read 'Uber, $62/share, 242 shares.'"; and
>
> (4) "[o]n or about January 17, 2019, a check made out to 'Knightsbridge Private Partners Uber & Palantir,' with the memo '2,000 shares Palantir[.]'"

Compl. ¶ 23. Pursuant to a warrant executed on March 21, 2019, $50,699.50 was seized from the Knightsbridge 8781 Account. See id. ¶ 4.

### 2. The Knightsbridge 8710 Account ($18,709.13)

Bank records show that a BOA account (No. 483064348710) was opened in the name of Knightsbridge (the "Knightsbridge 8710 Account") on or about November 1, 2018, using the same Bellmore, New York address and signatory as the Knightsbridge 8781 Account. See Compl. ¶¶ 4, 24. Of the approximately $2.1 million that was deposited into the Knightsbridge 8781 Account, approximately $677,700.00 was transferred to the Knightsbridge 8710 Account. See id. ¶ 25. Pursuant to a warrant executed on March 21, 2019, $18,709.13 was seized from the Knightsbridge 8710 Account. See id. ¶ 4.

### 3. The KPP Late Stage Account ($907.20)

Finally, bank records show that between December 20, 2018 and February 13, 2019, approximately $449,985.00 in investor proceeds were transferred from the Knightsbridge 8781

Account to a BOA account (No. 483077626526) held in the name of a Knightsbridge affiliate, KPP (the "KPP Late Stage Account"). See Compl. ¶ 26. On or about February 15, 2019, approximately $425,000.00 was transferred back to the Knightsbridge 8781 Account. See id. Pursuant to a warrant executed on March 21, 2019, $907.20 was seized from the KPP Late Stage Account. See id. ¶ 4.

## PROCEDURAL HISTORY

Plaintiff brought this civil forfeiture action *in rem* on September 23, 2019, see Compl., and on September 26, 2019, the Honorable Brian M. Cogan issued a Warrant for Arrest of the Articles *in rem*, see Warrant of Arrest for Articles *In Rem* (Sept. 26, 2019) (the "Warrant"), DE #2.[4] The government subsequently accomplished notice by publication, see Declaration of Publication (Jan. 28, 2020), DE #4, with the requisite notice of forfeiture posted on www.forfeiture.gov, an official government internet site, for at least 30 consecutive days, beginning on December 20, 2019, and ending on January 19, 2020 in accordance with Forfeiture Rule G(4)(a)(iv)(C), see id.; Orenstein Decl. ¶ 4. Additionally, the government provided sufficient notice to potential claimants to the seized funds by serving Knightsbridge Private Partners, LLC and KPP Late Stage, LLC with a "Notice to Claimant" on January 14, 2020 via certified mail (with return receipt requested) and by electronic mail. See Certificate of Service (Feb. 7, 2020), DE #5; Orenstein Decl. ¶ 5.[5] According to the government, it is unaware of any other known potential claimants to the Defendant Funds, see Orenstein Decl. ¶ 8, and, to date, no

---

[4] On January 27, 2020, this case was reassigned to Judge Kovner and referred to the undersigned magistrate judge for all pre-trial nondispositive matters.

[5] The government has provided copies of executed return receipts showing that it effected service of this notice via certified mail. See Certificate of Service at ECF p. 9.

potential claimant has asserted an interest in the Defendant Funds by filing a claim in this Court pursuant to Forfeiture Rule G(5)(a).

On February 21, 2020, the government requested a certificate of default, see Request for Certificate of Default (Feb. 21, 2020), DE #6, and on February 28, 2020, the Clerk noted entry of default against the Defendant Funds, see Clerk's Entry of Default (Feb. 28, 2020), DE #7. The government then filed the pending motion for default judgment on March 2, 2020 see 3/2/20 Cover Letter, and the motion was referred to this Court on March 24, 2020, see Order Referring Motion. This Court subsequently issued a Scheduling Order requiring the government to promptly serve a copy of its motion for default judgment and the Court's Scheduling Order on potential claimants, and required that any opposition to the government's motion for default judgment be filed with the Court by May 20, 2020. See Scheduling Order (Apr. 20, 2020), DE #9; see also Certificate of Service (Apr. 22, 2020), DE #10 (reflecting service by the government of its motion for default judgment and the Court's Scheduling Order on potential claimants via Federal Express). As of the date of this Report and Recommendation, no opposition to the government's motion has been filed.

## DISCUSSION

### I.    Standard of Review on Motion for Default Judgment

In order to obtain a default judgment, "Rule 55 [of the FRCP] sets forth a two-step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case." Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F.Supp.2d 177, 186 (E.D.N.Y. 2009) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)); see also Fed. R. Civ. P. 55.

"Rule 55(a) states that a clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Enron, 10 F.3d at 95; see Fed. R. Civ. P. 55(a); La Barbera v. Fed. Metal & Glass Corp., 666 F.Supp.2d 341, 346 (E.D.N.Y. 2009).

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Nevertheless, the court need not "agree that the alleged facts constitute a valid cause of action," TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks and citations omitted), and, "before [entering] a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law[,]" Taizhou Zhongneng Imp. & Exp. Co. Ltd. v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

Although courts, in deciding motions for default judgment, assume the truth of the pleadings' well-pled facts as they relate to liability, the facts alleged in the pleadings are not assumed to be true in assessing plaintiffs' right to the relief requested.  See Au Bon Pain, 653 F.2d at 65.  In other words, even if a defendant is found to be liable, the defendant's default is not considered an admission of the plaintiff's entitlement to an award of damages or equitable relief.  See Greyhound Exhibitgroup, 973 F.2d at 158; SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975).  Instead, the relief requested must "be established by the plaintiff" with evidence, Greyhound Exhibitgroup, 973 F.2d at 158, and may not exceed "what is specified in the [complaint's] 'demand for judgment[.]'"  Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007).

In this regard, a court may rely on "detailed affidavits and documentary evidence" and need not conduct an evidentiary hearing on the appropriateness of the relief requested. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 39-40 (2d Cir. 1989).

## II.     Legal Framework for Civil Forfeiture

In civil forfeiture actions, the government brings a civil action against the property itself as an *in rem* proceeding – it is the property that is proceeded against and held guilty and condemned "as though it were conscious instead of inanimate and insentient." United States v. $822,694.81 in U.S. Currency, Seized from Account No. XXXXXXXXXXXX, Held in the Names of Godwin Ezeemo & Winifred C.N. Ezeemo, at Bank of Am., No. 3:13CV545(DFM), 2019 WL 4369936, at *4 (D. Conn. Sept. 12, 2019) (citation and internal quotation marks omitted). *In rem* forfeiture proceedings "are governed by Rule G of the Forfeiture Rules and the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L No. 106-185, 114 Stat. 202." United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48), No. 13-CV-5567 (MKB), 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015) (citations omitted), aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents, 682 F.App'x 17 (2d Cir. 2017). "The Federal Rules of Civil Procedure also apply to such proceedings to the extent that they do not conflict with the Forfeiture Rules." Id. (citations omitted).

As set forth in 18 U.S.C. § 983(a)(1), where the government executes a seizure pursuant to a civil forfeiture statute, it must provide notice to interested parties. See $447,420.00 in U.S. Currency, 2020 WL 821904, at *3. Notice to interested parties may be satisfied by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days."

Forfeiture R. G(4)(a)(iv)(C).  In addition, with respect to any known potential claimants of the seized property, the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government[.]" Forfeiture R. G(4)(b)(1).[6]

According to the Second Circuit, "[a]ny 'person who asserts an interest' in the res that is the subject of a forfeiture action may 'contest the forfeiture by filing a claim in the court where the action is pending.'"  United States v. Vazquez-Alvarez, 760 F.3d 193, 197 (2d Cir. 2014) (quoting Forfeiture R. G(5)(a)(i)).  Within 21 days after filing that claim, the claimant must then serve and file an answer to the Complaint or a motion under Rule 12 of the FRCP.  See Forfeiture R. G(5)(b).  No such interest has been asserted in the instant case, nor has any claimant filed an answer to the Complaint or a Rule 12 motion.

As to the burden of proof applicable to civil forfeiture actions, before the passage of CAFRA in 2000, "the initial burden in judicial forfeiture proceedings was placed on the government to establish probable cause for forfeiture; once this burden was met, however, the ultimate burden lay with the claimant."  United States v. $22,173.00 in U.S. Currency, 716 F. Supp.2d 245, 250 (S.D.N.Y. 2010) (quoting United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 77 (2d Cir. 2002)).  Under CAFRA, the government must now prove by a preponderance of the evidence that the property is subject to forfeiture and, until the government does so, a claimant need not make any showing.  See 18 U.S.C. § 983(c)(1).  Additionally, to the extent the "[g]overnment's theory of forfeiture is that the property was used to commit or

---

[6] As set forth above, the government satisfied these requirements by providing proper notice to interested parties and potential claimants.  See *supra* p. 5.

facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the [g]overnment shall [also] establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

In the instant suit, the government must therefore show a substantial connection between the seized property – the Defendant Funds – and any of the three offenses that underlie the government's theory of forfeiture.[7]

### III. The Government's Application for Forfeiture

The government's claim for forfeiture arises under 18 U.S.C. § 981(a)(1)(C), which provides, in pertinent part, that the following property is subject to forfeiture to the United States: "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity[,]'" including the proceeds of a multitude of offenses such as "mail, wire, and securities fraud . . . ." United States v. Razmilov, 419 F.3d 134, 135 (2d Cir. 1995); see United States v. Treacy, 639 F.3d 32, 40-41 (2d Cir. 2011).

Here, the allegations set forth in the government's Complaint establish that the Defendant Funds are subject to forfeiture under the Second and Third Claims for Relief, alleging wire fraud and securities fraud, respectively. The Second Circuit has held that the essential elements of wire fraud (similar to those of mail fraud) are (1) a scheme to defraud; (2) money or property as the object of the scheme; and (3) the use of the wires to further that scheme. See United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017) (per curiam) (quoting United States v. Binday, 804

---

[7] While the government seeks the remedy of civil forfeiture under three different legal theories of liability, it "is of course only entitled to one recovery." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995).

-10-

F.3d 558, 569 (2d Cir. 2015)). "Because the mail fraud and wire fraud statutes use the same relevant language, [courts] analyze them the same way." Id. (quoting United States v. Greenberg, 835 F.39 295, 305 (2d Cir. 2016)). "[T]he gravamen of the offense is the scheme to defraud[,]" Malvar Egerique v. Chowaiki, 19 Civ. 3110 (KPF), 2020 WL 1974228, at *10 (S.D.N.Y. Apr. 24, 2020) (citation omitted and alteration in original), and "[i]n order to prove the existence of a scheme to defraud, [the plaintiff must prove both] 'that the misrepresentations were material . . . and that the defendant acted with fraudulent intent[,]" id. (citation omitted).

The Second Claim for Relief sufficiently alleges that the Defendant Funds are derived from violations of 18 U.S.C. § 1343, the wire fraud statute. The pleading describes a detailed, years-long scheme by which Knightsbridge, along with Access and their employees, defrauded investors by soliciting monetary investments in certain pre-IPO Companies, even though neither Knightsbridge nor its affiliate directly owned any shares in those Companies. See Compl. ¶¶ 12-17. Knightsbridge and Access operated a series of websites and call centers that were used to solicit these investments, and, after investing, investors were sent documents memorializing their supposed investments in these Companies. See id. ¶¶ 13, 19-20. By way of example, the Complaint alleges that "Investor-1," an elderly resident of Alabama, was solicited over the phone by Knightsbridge brokers in October 2018 and again in January 2019 and, based on their misrepresentations, he was induced to "invest" a total of almost $250,000. See id. ¶¶ 17-21; *supra* p. 3 n.3. All told, the scheme generated millions of dollars in proceeds from defrauded investors, which were placed in the BOA accounts, of which only $70,315.83 remains. See Compl. ¶¶ 4, 17. Based on the foregoing and the additional information provided in the verified Complaint, the government has sufficiently explained how the telephone calls advanced and

-11-

executed the scheme to defraud investors, and the circumstances surrounding these events create a "strong inference" of the intent to defraud. Cf. Beck v. Mfrs. Hanover Tr. Co., 820 F.2d 46, 50 (2d Cir. 1987) (describing the scienter requirement under the federal mail and wire fraud statutes).

Despite the similarity between the mail and wire fraud statutes, the Complaint's allegations of mail fraud are deficient, in that they cite no use of the Postal Service or "private or commercial interstate carrier[.]" 18 U.S.C. § 1341. While the pleading does refer to letters and other documents exchanged between Knightsbridge and Investor-1, see Compl. ¶¶ 19-21, notably absent from the Complaint is any description of the mode of transmission, which may well have been by electronic means. As the Complaint therefore "fails to identify any specific use of the mails" by Knightsbridge or its defrauded investors, the government's "general allegations of mail fraud plainly do not suffice." Empire Merchs., LLC v. Reliable Churchill LLLP, 16-CV-5226 (AAR) (LB), 2017 WL 5559030, at *7 (E.D.N.Y. Mar. 16, 2017) (dismissing mail fraud allegations in connection with civil RICO claim, despite pleading's general allegations that defendants 'communicat[ed] by . . . mail'") (alteration in original), aff'd, 902 F.3d 132 (2d Cir. 2018).

In contrast, the Third Claim for Relief, for securities fraud, is sufficiently pled. To sustain its cause of action pursuant to section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), "the government need only establish that the defendant '(1) employed a device, scheme or artifice to defraud, or make an untrue statement of material fact which made what was said under the circumstances, misleading, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a

purchaser or seller; (2) participated in the scheme to defraud knowingly, willfully and with intent to defraud; and (3) knowingly used, or caused to be used, instrumentalities of interstate commerce in furtherance of the scheme to defraud or fraudulent conduct.'" United States v. All Funds on Deposit in, or Transferred to or Through, Banc of Am. Account No. 207-00426 Held in the Name of Kenneth V. Jaeggi & Patti S. Jaeggi, No. CV-05-3971(SJF), 2007 WL 2114670, at *6 (E.D.N.Y. July 16, 2007) (citing cases). In its analysis of wire fraud, this Court already determined that there existed a scheme to defraud investors. See *supra* pp. 11-12. Moreover, the facts described in the Complaint demonstrate that Knightsbridge, along with Access and their employees, participated in that scheme knowingly, willfully, and with an intent to defraud, and solicited purported investments through a series of websites and call centers. Cf. United States v. Konn, 634 F.App'x 818, 821 (2d Cir. 2015) (finding that "the Internet is a channel and instrumentality of interstate commerce"). As such, the Complaint adequately states a claim for securities fraud as a predicate for civil forfeiture.

For the reasons outlined above, the Complaint, which describes the source of the Defendant Funds in each of the three BOA accounts, see Compl. ¶¶ 23-26, sufficiently establishes a substantial connection between the Defendant Funds and Knightsbridge's wire and securities fraud violations. No interested party has filed a claim to dispute the government's allegations, which this Court takes as true in deciding this motion. Accordingly, the District Court should grant, in substantial part, the government's motion for default judgment, and find that the Defendant Funds, along with accrued interest, see United States v. Approximately $25,829,680.80 in Funds, No. 98 CIV.2682 LLM, 2002 WL 31159116, at *1 n.1 (S.D.N.Y. Sept.

27, 2002), are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), see generally $447,420.00 in U.S. Currency, 2020 WL 821904, at *4.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the government's motion for default judgment be granted in substantial part, i.e., on the Second and Third Claims for Relief, and that the District Court issue a Default Judgment and Decree of Forfeiture Order against the Defendant Funds totaling $70,315.83 (and accrued interest) as follows: $50,699.50 (and accrued interest) from the Knightsbridge 8781 Account; $18,709.13 (and accrued interest) from the Knightsbridge 8710 Account; and $907.20 (and accrued interest) from the KPP Late Stage Account.

Any objections to this Report and Recommendation must be filed with the Honorable Rachel P. Kovner on or before **July 6, 2020**. Failure to file timely objections may waive the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The government is directed to promptly transmit copies of this Report and Recommendation, via overnight Federal Express, to the following address, and to file proof of service:

    Knightsbridge Private Partners, LLC
    KPP Late Stage, LLC
    c/o A Registered Agent Inc.
    8 The Green, Suite A
    Dover, Delaware 19901

    **SO ORDERED.**

**Dated:**   **Brooklyn, New York**
           **June 16, 2020**

                                   /s/     *Roanne L. Mann*
                                   **ROANNE L. MANN**
                                   **UNITED STATES MAGISTRATE JUDGE**